Judge Mills
delivered the opinion.
This is a sui< in chancery, wherein the validity of inter-: fering claims is in issue. The complainant claims by virtue of a certifícale granted to him by the county court of Fayette, on the l2tb March. 1782, and its calls are — “situate on the main branch of Licking creek — to include an improvement made in the year 1773 by said Findlay — and to be bounded by a survey made at the time for him, which includes the upper Blue Licks, by virtue of such marking out and improving, and his being in public service when the commissioners sat in the district, and thereby prevented from applying for the sanie.” After this certificate, on the 14th November. 1783, he made an entry in the following words — “John Findlay enters IUOO acres of land on preemption warrant. No. 2536, on Licking, to include the upper Blue licks, and bounded on the sides by the lines of aa old survey made in the year 1773 — beginning at a white oak, (the N W. corner of said old survey) 76 poles from |he creek on the south side. Thence with the old lines S, 15 W, 480 poles, to a dog-wood corner — Thence S. 75 E, 333 1 3 poles — Thence N, 15 E, 480 poles, to a line of the old survey — Thence along said line N, 75 W, 333 1-3 to lite beginning.”
Licking and the upper Blue licks arc shewn to be unquestionably notorious at, and long before, the date of this certificate and entry. The proof is made by the surveyor, that in 1773 the cuutplainaut, and a considerable company *189 ®f others came from the then disputed territory betWieh Virginia and Pennsylvania, and executed sundry surveys for the company on the north fork of'Licking and elsewhere; and mong the rest, one including the upper Blue licks: — - That after the company returned to their homes, they dfevy Jots for their surveys, and the one in question fell to the complainant. It does not appear that any of the company was ever again in Kentucky till long after this entry was made; but the contrary seems to be the fact, except one, who appeared before the county court tfhen the certificate was obtained, asa witness. The complainant himself entered the United States’ revolutionary army, and served in the eighth regiment of the Pennsylvania line, till about the close of the year 1783. The surveyor, who has deposed on the occasion, fixes the corners of the old survey as called for in the entry, and states that each line was 480 poles long, including 1440 acres. That he began at a point on one line of the survey, and started in one direction, while another surveyor started at the same point and run an opposite course, and they were each to do half and then close the survey by meeting as they continued round: That he did his contemplated half; but it does not appear they ever met, and the contrary is to be inferred from the language of the witness. It also appears that at a period long subsequent, a part of the old line was found, when the survey was executed, being that part proved to have been made by the original surveyor, then anciently marked, and such appears to be the case at this time. But there is no proof shewing that Findlay had any improvement other than the surveying aforesaid; nor is there any proof that the private survey ever acquired any degree of notoriety, or that it was ever found, except ¡I was shewn by one of the party who aided in making it, and that after the entry in question was made.
In deciding on this case, the court below destroyed the certificate, but sustained the entry of the complainant, and likewise the entry of the defendant. But after it had given the latter its position, it covered all the interference with the complainant; and as it was elder than the complainant’s entry, though posterior to his certificate, the court dismissed the complainant’s bill: from which decree the complainant has appealed.
The objection which presents itself to this certificate on its first appearance, to wit, that of its including, by a cer- *190 lain boundary, from whieh it cannot depart, 440 acres moré oi land than the Igw allowed,- mnst lie fatal to it, even if it was in other respect's ppexceplionable l.and was included ivlnclt the law allowed hot to be there; and m e part of the boundary, (xy d by the old line, was as sacred - as the other. No sp it could be depa.twl from without vi->-luting its calls, We ciiiiuot adopt the mode of surveiing it on all lour, sides, and liter- by include the land common to tacit survey, for each survey would violate the certificate. Whenever then it c intends with another claimant, he might tone allowed 1 lie privilege of saying that it rimstseek its interest elsewhere, and not covering him, or rather as it is uncertain where it m> s! Hike its position, it must have it no where, as was decidid by this court in the case of an entry embracing, by a certain boundary, more than its quantity could cover, in ti e case of Coleman vs. Henderson, t Marsh. 412. Independent, howivtr, of this objection, this certificate could cot he sustained, even if the surey contained the exact quantity appropriated. It communicates to the enquirer tin; isolated fact of die existence of a private survey there, and assumes its lines ns the boundary, and leaves dial boundary untold. In what manner the survey included lilt; Jink, co ild not be told. No record or public document told it The various positions in which even need angular figure, wjtli lines of equal length including lite iick, might be placed, would almost exceed the power of numbers, and the lines of die survey might «x-tetul in number, from the number of a triangle to that of the most complex and irregular poly gon; am) if by accident they should he found, uo means would he left by which it could be determined to be the survey intended. The complainant then cm derive no aid from his err ifieute,.but must rely on his entry alone with the surveyor of a much later date It must be confessed that the.entry does aid some of the .defects'in the certificate. It curtails the quantity, and only takes what the warrant co ¡id cover It gives the courses and distances of ti e lines, as well as point of beginning, and the kind of timber of which two of the corners were composed, In a word, it'furnished completely the means of determining that the survey vvas the one intended, after any one of the linea and comers were fourd, and the question remains, could they certainly have been found by using reasonable diligence, irt making the search. T fie enquirer at the lick, ivilb the entry in his hand, would *191 tfc'cn know-that he was n¡thin an oblong made by an old survey, I be lines of Which were one n i!e and one half by a mile and thirteen poles and a third, and ‘that the lines Mil fifteen degrees variant from the cardinal points of the compass. He would then he in dense woods, except so far as it was subdued by the irregular and frupitnt use of the beasts of tlie forest, and which line or which cerner veas nearest to him, and which direction he should choose to SlaH, out of every point of Ine compass, as the most sue-cessful one to make the search, must be a source of much embarrassment. Was lie to search near I lie Ji* k or a mile from it? By casualty or extru rdmary success he might fit id some mark , vvnicli wuuld lead him to trace it and be Successful; but vvheie is tlie certainty that lie would do Would it be reasonable to rt quire of him such instinctive movement as would perchance make him successful, when he could derive no aid from the information of any resident C f the country? We conceive not, unless some more par ticular description in the ei.trv shall furnish him with a direetion, and give him Some tntunatiou ol the. distance.— Tlie only thing in the e: try uhicb can claim to be the cor-ted due, is the call “beginning at a vvhite nak the N. W. corner of said old survey , 76 poles from the creek on the south side ” By Ibis lie is told that the north w< si. corner Cf the old survey is a while oak, and that it stands on the Soutli side of the creek 76 poles from the stream. He roust also know, if acquaint» d at all with the course of the ttream, that this corner, to include tlie lick in the survey, tnust be tn arty opposite io, or below, ihe lick. But w hen lie comes io apply the survey to tlie general course of trfetk below, he would find that the survey ¡night be extend-pd so low down the river as the whole length of its side line, being bne mile and one In If, or nearly so, and still ba-tly include the lick within its upper boundary, or extended so far up the river as barely to include the lick within ’.be lower boundary, in which cast the north west comer of the survey must be posted 76 poles from the creek nearly opposite to the Sick. We will, however, Suppose that fie has gone through this sliding process, and that he has iKie ilidc red the stream, and fx d the highest and lowest point 76 po|es from the creek on the south side, from wbicb lie can'construct'the survey according to Ihe courses so as to include the lick, and that be has connected tlnSe two points by a line with a surpentine sytirse, «(informed to the *192 meanders of the stream, nearly one mile and one half* ia ^en8^' when reduced, and still longer with its courses, and that he has examined every spot on that line, large enough to contain the base of the tree, yet he would not find it. For it appears from the plat that the tree stands eighteen poles and one half short of the distance of 16 poles from, the creek, that is, counting the distance on the first line of the survey to the crossing of the creek; but counting it to the nearest point on the creek below that, the distance is still shorter to the river. But assuming the line of the survey as the correct course to moasure the distance to thé creek, and thus the meandering line, 16 poles from ths creek, must be extended in width eighteen poles and one half, and on this border the enquirer might be compelled to search a space of that breadth, nearly one mile and one half long, on a direct line, for e- try white oak which stood Upon it to find the one intended. Add to this, that if the locator is allowed to vary eighteen poles and one half nearer the creek, he ought to he allowed the same deviation verging further from it, and thus extend the stripe to be searched to the width of thirty-seven poles, amd thus the burden of search be greatly augmented. Painful, laborious and excessive in the time required, would be the search imposed Upon a subsequent locator, by sustaining this entry, especially when it is recollected that the trees, and probably tboáe of thé same kind, were numerous, amd covered the whole unconquered forest j— as well might he be driven on a lengthy and bioad shore to search out one grain of sand which could be distinguished from others, among the myriads which covered it. The entry, therefore, 6Í the appellant is adjudged invalid, and cannot be sustained, it was suggested in argument for the appellant, and partially conceded by his adversan, that to suppose that a subsequent locator would have found this entry would not be extending greater leniency towards it than had been extended by this court on former occasions entries calling for ancient surveys; but on a critical examination of the cases, it is conceived this will be found to be incorrect. It must however be admitted, that entries in this respect, as well as most Olliers, have not been subjected to very rigid rules. These cases, Key vs. Matson, Moore vs. Whitledge and Reno, Respass and Metton vs. Arnold, and Cartwright vs. Collier, Hard. 70, 89, 116, 179, subjected such calls for ancient surveys to the same principles with other calls. Such sur *193 vey* mast be either accessible on the records and contain #ach dfcscription .wi^h reference to other kuovfri objhcti, bs Would aseeitarh their position, or they must be shewn to have actual notoriety in themselves, or sbifte (ifcdmstanees biust be prjoved fWüi tfTíicb nhiofiHv could' 6⅜ fairly presumed. The circ'timstance of 4 pér'son’s residing upon the liivdy, • óf tile 5eher.1l territory included by tlieir being known and distinguished in the neighborhood, and of (life fact Béiiigf víéíl uhdérétodd that ti# ¿úívéy existed, or of íne" survef b’éiug tóilttafy, which, ftb'itf its daítigérohs cliar-Bctef to locafofs, vfould necessarily bééómé ais object of fear, and search to them or SOtfie s'uriilaf cirenmstaivéesbave míen ca'úsdd lltiá notoriety of sitíveys;, a*S vfelj aS a ItiioW-Iydge of tlieir position to be supplied by presumption. But it is believed d caSé cannot be" found, where a survey pos-Üessinl rió* t)6'orielj in iíséff, and res(« oh its de'sfripfioij fit’ll legdfiifo o'flíér objects, a'nd that description has great Uncertainty aWd has ihípoá^d upon' enquirers painful and ffijbióu* search, has* been sustained a's a good locative call, ff suc'fí caáes should efist, they ought rather to be made tó dijiifofiii to tfié principle, that an entry to be good, is o'nc. that can ctrtainly be found on using téasonáble diligéici; ffidti ffiat |1⅛ principle should be marred, by the detail of tile edges. Notoriety and description are used for the sole ^furpoáfe of shewing that an entry can bé found, and ail éasés nihst be so rdiisl'rusd as to let t bis im'perio'jd rule pass ftifóiigíi thétó'uhli'úri. We shall further remark' that if ahy #tTiitii'nal fácié coiild sustain the entry In question, if would be by proving that the line from the white oak tree vvas' well nTarked to the river, so that'any person passing down the -river, on nr near ifs uiifgin, coiild certainly by searching, nave found it (in* this point, however, the proof is ri. fi.. cíen!. No rt'iiiiess'sfaies it, nor does'ihe original rephiri of eu/véy make it. appear if is true a lie report of surVey ufr-Ífí 1 He iiiVerlócuíory dierte, staies the pursuit of an old liiarkYd line'from'the free; but of what daté that line Was, or whether Well mink'd'. or not. of whether the" (harks api. jffpacu the! river, if oof stated' For t hese reasons?, thérefófé, Tvi t houl relying 60 I lie reasons' aSsigtied by t lie ccibrt' ⅛⅜> w1, rie concur in aífi'rihítig'the' decision of* that' colirVwiiir eosói.' ,
A cer ifie ’e f r a | re top- <*'•(», ' al i ■* for 1« ni* s o all ol'i )» • Vate stirv'éj, 8! ll r t til v ¡Hi* jug .onH.i’et-*My m.-r- ■ lau , Ui i wan-.n jo» lift m, is uail, nor csn i- ⅛-temieren valid bv sir" ey-lr ⅜ «• each line & ; ‘⅛⅛'* iijg i:--i'■ only Vi kU i c v er fl m common:— h eiH for' me. tin-. s ca uo be aUaiu XM-eu
A rc.tincab c itiugtbvt e l lita f ⅛ \)i i" vao stirvei. with ui de * r-biijl tut figure oi tli-tan ve\ > o*1 bow ihote lnu s aie 'O be f il' d, ⅛ void for uncertain^.
\n entry-ogling m be. ,,n niaprivate survey, with. p"t ''esci-ib. . iVi c ,r. ner is to be fo" 13 ^¡,r’y time it W lS made, c uo‘i v of «’i>on enqui-ni?s col!‘‘,, ¡,⅛,-, m.ideasto its ly 'wiih ” '< winch the jj'■•’nie)1' woulj 'if found from i*SCOTe3íK',n’,' f'f f aid thp'-: eutry.
c¡i. c rteiniy be f.u .d j.y Jj*™* gence>
JB'ibi) for' nppéiíáfcí, li'trdiri for appéllée.